UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

WING KWONG HO,                                    NOT FOR PUBLICATION

                          *Plaintiff*,           **FINDINGS OF FACTS AND
                                                  CONCLUSIONS OF LAW**

     -against-
                                                  08-CV-4750(KAM)(RER)

TARGET CONSTRUCTION OF NY, CORP.
and XUE WEN ZHU,

                          *Defendants*.
----------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiff Wing Kwong Ho ("Ho" or "plaintiff")

commenced this action on November 24, 2008, alleging violations

of federal and state labor laws during his employment with

Target Construction of NY, Corp. ("Target Construction") and Xue

Wen Zhu ("Zhu") (collectively "defendants").  (*See generally* ECF

No. 1, Compl.)  Specifically, plaintiff alleges that defendants

failed to pay him minimum wage for all hours worked and overtime

for all hours worked over forty in a week, in violation of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and

New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.2.  Plaintiff also

alleges that defendants failed to pay him wages at his promised

rate on a regular basis, in violation of NYLL § 191, that

defendants failed to pay him an extra hour at the applicable

minimum wage rate for each day he worked more than ten hours in

one day, in violation of NYLL §§ 650 *et seq.*, N.Y. Comp. Codes

R. & Regs. tit. 12, § 142-2.4, that defendants failed to

reimburse him for employment-related expenses, in violation of

NYLL § 198-b, that defendants issued checks to plaintiff that

were dishonored, in violation of New York Uniform Commercial

Code, N.Y. U.C.C. § 3-507, and that defendants were unjustly

enriched by services performed by plaintiff, in violation of New

York common law.[1] These claims were tried before this court on

August 2 and 3, 2010.[2]

Having considered all the evidence at trial,[3] assessed

the credibility of the witnesses, and reviewed the post-trial

---

[1]    In his complaint, plaintiff also alleged claims of retaliation, battery and breach of contract. (*See* Compl. at 12-14.) These claims were abandoned prior to trial, and are dismissed and thus not addressed by the court here. (*See* ECF No. 34, Pl. Pretrial Order, at 4 ("Plaintiff hereby states that the claims for retaliation, battery and breach of contract, previously asserted in the Complaint, will not be pursued at trial.").)

[2]    Defendant Target Construction defaulted prior to trial. Plaintiff filed a motion for entry of default on September 15, 2009. (ECF No. 15, Mot. for Entry of Default for Target Construction.) The Clerk of the Court entered a certificate of default on October 16, 2009. (ECF No. 20, Clerk's Entry of Default.) On October 22, 2009, plaintiff filed a motion for default judgment against Target Construction. (ECF No. 21, Mot. for Default Judgment as to Target Construction.) The court deferred ruling on the motion for default judgment against Target Construction until after the bench trial, given the need to make determinations relevant to the motion at trial. (*See* ECF Order dated 8/3/2010.) Because Target Construction defaulted, the allegations in the well-pleaded Complaint may be accepted as true. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . ."). The court has also evaluated the evidence admitted at the bench trial to establish the liability and damages as to both defendants Target Construction and Zhu.

[3]    Because of defendant Zhu's repeated failures to comply with court orders, the court precluded him from presenting evidence at the bench trial in support of his defense. (*See* ECF No. 39, Order dated 6/3/2010.)

submissions of the plaintiff,[4] the court makes the following findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52[5] ("Rule 52") and ultimately concludes, for the reasons set forth below, that plaintiff is entitled to recover unpaid wages at his promised rate under NYLL, overtime pay under NYLL, spread-of-hours pay under NYLL, reimbursement for employment-related expenses under New York common law, liquidated damages under NYLL, prejudgment interest, and attorney's fees and costs.

## FINDINGS OF FACTS

A.  Parties and Employment Relationship

Ho worked as a project manager's assistant for Zhu[6] and Target Construction from mid-January 2007 through November 21, 2007. (Tr. at 36-37, 52, 91-92.)[7] Ho and Zhu had known each other for some time prior to the beginning of the employment relationship, since approximately 1996, and they were, according to plaintiff, close friends. (*Id.* at 35, 134.) Additionally,

---

[4]    Defendant Zhu was given an opportunity to file post-trial submissions, but failed to do so. (*See* ECF Minute Entry dated 8/3/2010; *see generally* ECF Docket.)

[5]    Rule 52 provides, in relevant part, that following a bench trial, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52.

[6]    Zhu is sometimes referred to in the Trial Transcript as "Ako." Zhu stated at the beginning of the trial, when stating his appearance, that his English name is "Ako." (Tr. at 2.)

[7]    Citations to the bench trial transcript from August 2 and 3, 2010 are designated "Tr."

Ho and Zhu had previously worked together at another construction company. (*Id.* at 35-36.)

Zhu hired Ho after running into him on the street and offering him a position at Target Construction. (*Id.* at 35, 119-23.) Zhu was the owner of Target Construction and the only person in charge of its operations and, at the time Ho was hired and all times throughout the employment relationship, Zhu set the wages, hours, and terms and conditions of employment for Ho. (*Id.* at 36-37, 70-72, 83-84, 119-23.)

Ho reported to Zhu on a daily basis regarding the work at Target Construction, and received instructions from Zhu on the tasks to be performed each day. (*Id.* 41-43, 45.) Zhu was responsible for paying Ho his salary and for reimbursing Ho for expenses incurred by him on behalf of Target Construction. (*Id.* at 55, 57-58, 71-72, 81-82, 108-09.)

B.  Terms and Conditions of Employment

Zhu and Target Construction failed to maintain records documenting the terms and conditions of employment for Ho. At the bench trial, Ho testified regarding his recollection of his terms and conditions of employment, as communicated to him by Zhu at various times throughout the employment relationship. *See infra*. The court finds that Ho's testimony was credible and relies on that testimony in making the following findings regarding Ho's terms and conditions of employment.

Upon hiring Ho, Zhu promised him that he would earn wages of $80 a day and that his work hours would be 9:00 a.m. to 5:00 p.m. (*Id.* at 36.) Zhu and Ho did not discuss whether Ho would be paid overtime. (*Id.*) Zhu instructed Ho that the position with Target Construction required Ho to be hard-working, easily available, and very mobile, so that a car was necessary for the position. (*Id.* at 119-23.) In addition, Zhu promised Ho that Target Construction would pay for his gasoline, parking tickets, lunch, and phone expenses. (*Id.* at 36, 119.) Zhu did not promise Ho a stake or partnership in the business or any share of the profits. (*Id.* at 37.)

Ho received three salary increases during his time working for Zhu and Target Construction: (1) after February 16, 2007, to $90 a day; (2) after March 15, 2007, to $95 a day; and (3) after April 6, 2007, to $105 a day. (*Id.* at 70-72, 83-84.) No evidence was presented to indicate that the increased daily rates corresponded to an agreement that Ho would work longer hours. Ho was instructed that if he worked half a day, meaning until about lunchtime, he would receive half the promised daily rate. (*Id.* at 53.) In every instance, Zhu informed Ho of the increases in his daily salary. (*Id.* at 71-72, 83.)

C.  Job Duties

Zhu gave Ho instructions on his job duties. (*Id.* at 42-45, 57.) In the morning, Zhu would instruct Ho on which

tasks needed to be completed that day and/or what materials had to be purchased. (*Id.* at 42.) Additionally, Zhu instructed Ho that, as part of his job duties, he was required to pick up workers every morning and drive them to the job sites, and then drive the workers home at the end of the day. (*Id.* at 44-45.) One of the workers Ho had to drive to and from job sites was Zhu's father. (*Id.* at 45.) When dropping off Zhu's father at the end of the day, Ho would report to Zhu and sometimes receive further instructions from him. (*Id.*)

Ho was also responsible for doing part of the construction work, purchasing and picking up tools and construction materials, driving workers from one job site to another, paying for bills, and other odd jobs. (*Id.* at 41-43, 45, 128-30, 154-55.) When purchasing tools or construction materials, Ho regularly shopped at Home Depot or Lowes. (*Id.* at 57.)

D.   Days and Hours of Work

Zhu and Target Construction failed to maintain any records documenting the days and hours that Ho worked for Target Construction. At the bench trial, Ho introduced into evidence as Plaintiff's Exhibit 7 a calendar (hereinafter "work calendar"), in which he noted the days and times he worked for Target Construction between January 29, 2007 and November 21, 2007. (Tr. at 50-53, 57; Pl. Ex. 7.) Ho testified at trial

that he began working for Target Construction in approximately mid-January 2007, and that, starting on January 29, 2007, he kept contemporaneous records of his work days by circling each day on the work calendar. (Tr. at 50-52.) Further, Ho testified that he did not keep contemporaneous records of his hours, but that he later noted his estimated work hours on the work calendar based on his memory and on the times marked on receipts for employment-related purchases. (*Id.* at 52-53.) Additionally, Ho testified generally about his work hours and daily routine while at Target Construction. *See infra*. The court finds Ho's testimony credible, and relies on that testimony and Ho's notations on the work calendar in making the following findings regarding the days and hours that Ho worked for Target Construction.

Ho generally worked five days a week, though sometimes he was required to work Saturdays or Sundays. (Tr. at 43; *see generally* Pl. Ex. 7.) When Ho first started working for Target Construction, his work hours were, as promised by Zhu at the time he was hired, 9:00 a.m. to 5:00 p.m. (Tr. at 44; Pl. Ex. 7.) After that, his hours started to gradually increase. Beginning February 11, 2007, Ho worked from 8:00 a.m. to 5:00 p.m. (Pl. Ex. 7.) Beginning on February 27, 2007, his work hours increased again to 7:00 a.m. to 6:00 p.m. (*Id.*) During July, August and September 2007, his work hours were often 7:00

a.m. to 7:00 p.m. or 8:00 p.m. (*Id.*) Ho explained that his work hours were longer during the summer months because the days were longer, permitting the workers to work longer hours at the job site. (Tr. at 54-55.) For about six days in October 2007, from October 23 to 28, Ho was required to work very long hours, until 3:00 a.m. or 4:00 a.m., due to a time-sensitive construction project. (Tr. at 45-46, 53-54, 123-27; Pl. Ex. 7.) Zhu promised Ho double his daily rate for working long hours during those days. (Tr. at 84.)

Ho regularly took a twenty (20) minute lunch break, and he was required to remain at the job site during that break. (*Id.* at 46.) Additionally, Ho would occasionally take a ten (10) minute coffee break with the other workers in the afternoon. (*Id.*)

Having reviewed the work calendar, as well as the testimony at trial, the court calculated the days and hours worked by Ho between January 29, 2007 and November 21, 2007. These findings regarding the days and hours worked by Ho are summarized in the table attached and incorporated as Appendix A.

E.    Failure to Pay Wages

Zhu and Target Construction failed to maintain any records documenting payments of wages to Ho. At the bench trial, Ho testified that Zhu made three payments before the termination of his employment with Target Construction. *See*

8

*infra*.  Ho testified that he documented each payment in his work calendar, referenced above, and crossed out the work days covered by each payment.  (Tr. at 51.)  The court finds his testimony credible, and relies on that testimony and on the notations on the work calendar to make the following findings regarding the payment of wages to Ho.

Zhu paid Ho for the previous thirteen days of work on February 16, 2007 at the rate of $80 per day.  (Tr. at 71; Pl. Ex. 7.)  Zhu paid Ho for the previous nineteen days of work on March 15, 2007, at the rate of $90 per day.  (Tr. at 71-72; Pl. Ex. 7.)  Finally, Zhu paid Ho for the previous sixteen days of work on April 6, 2007, at the rate of $95 per day.  (Tr. at 72; Pl. Ex. 7.)  After the April 6, 2007 payment, Ho did not receive any other payments for wages from Zhu or Target Construction.[8] (Tr. at 55, 72, 83-84.)  Zhu sometimes paid the other Target Construction workers, but payments were not always made and some workers left the company.  (*Id.* at 72, 109.)  Ho was never paid additional wages for working in excess of forty hours in one week, and was never paid any additional wages for working in excess of ten hours in one day.  (*Id.* at 53, 84.)

Ho continued to work for Zhu and Target Construction without pay because he trusted that Zhu, whom he had known for a

---

[8]     Ho did receive several checks from either Target Construction or Zhu personally as payment for his wages, but these checks were dishonored.  These payments are discussed in Section G, below.

long time and considered to be a close friend, would eventually pay him his wages. (*Id.* at 62, 73-74.) Ho was able to work without pay for so long because he had few expenses and had savings from his mother's life insurance policy after she passed away. (*Id.* at 62, 73-74.)

F.  Employment-Related Expenses

Zhu and Target Construction failed to maintain records documenting employment-related expenses incurred by Ho. In fact, Ho testified that Zhu asked him to turn over his records of employment-related expenses so that Zhu could prepare his taxes. (*Id.* at 139.) Further, on the occasions that Ho turned over receipts to request reimbursement, Zhu simply returned the receipts to Ho after inspecting them. (*Id.* at 62-63.) At the bench trial, Ho testified that he kept the receipts for employment-related purchases and made notations of other employment-related expenses in a notebook, which he then input into a series of spreadsheets. (*Id.* at 62-64, 175-90; *see generally* Pl. Ex. 6.) Additionally, Ho testified that he kept record of all the advances and reimbursements that he received from Zhu, and that he also input this data into the spreadsheets. (Tr. at 58, 63, 180-81; *see generally* Pl. Ex. 6.) Copies of the receipts, notes and spreadsheets were introduced into evidence at trial as Plaintiff's Exhibit 6. (Pl. Ex. 6.) Further, counsel for plaintiff submitted charts summarizing the

information contained in that exhibit. (ECF No. 52-1, Summaries of Evidence ("Pl. Ex. 6 Summary"); ECF No. 57, Pl. Post-Trial Mem. ("Pl. Mem."), Ex. B.) The court finds the testimony and documentary evidence provided by Ho to be credible and reliable, and relies on his testimony, Plaintiff's Exhibit 6 and the summaries of Plaintiff's Exhibit 6 to make the following findings regarding his employment-related expenses.

Part of the job duties assigned to Ho as a project manager's assistant at Target Construction, as was stated above in Section C, included purchasing tools and construction materials. (Tr. at 41-42, 45, 57, 82; *see generally* Pl. Ex. 6.) In addition, Zhu would occasionally ask Ho to make other payments on behalf of Target Construction, including paying for meals for the other workers, tipping delivery drivers dropping off materials at the various job sites, paying for the gas for a Target Construction generator, and, at times, paying the salary for the other workers. (Tr. at 42-43, 61, 65-66, 82; *see generally* Pl. Ex. 6.)

Ho also paid for gas for his car, which he used to drive workers to and from job sites or from one job site to another, or in picking up or transporting tools and construction materials to and from job sites. (Tr. at 68, 81-82; Pl. Ex. 6.) When Zhu first hired Ho, he suggested that Ho purchase a car because mobility was necessary for the position, and promised Ho

11

he would be reimbursed for all his gas expenses. (Tr. at 36, 68, 119-22.) Ho purchased the car specifically for his job with Target Construction, and used it primarily for Target Construction business. (*Id.* at 68-69.) His personal use of the car was mostly limited to going grocery shopping. (*Id.*)

Ho also paid the bills for his work cell phone. (*Id.* at 68-69, 82; Pl. Ex. 6.) When Ho started working for Target Construction, Zhu instructed Ho to open a cell phone account with Verizon to be used for Target Construction business only. (Tr. at 69.) Ho already had a personal cell phone, and opened the new cell phone account as instructed. (*Id.*) He very rarely used the work cell phone for personal use. (*Id.*)

Zhu generally gave Ho advances for large Target Construction purchases, such as when a large order of materials had been made. (*Id.* at 57, 61.) If any money was left over from an advance, Ho would keep the extra money and use it for future Target Construction expenses. (*Id.* at 69-70.) Ho never kept any extra advance money to pay for his salary. (*Id.* at 73.) Zhu also made reimbursements to Ho for some of his employment-related expenses. (*Id.* at 82; *see generally* Pl. Ex. 6.)[9] However, Zhu failed to make advance payment or to reimburse

---

[9] As explained in more detail *infra*, these advances and reimbursements were deducted from the calculation of the amount owed to Ho for employment-related expenses.

Ho for all of his employment-related expenses. (Tr. at 61, 82; *see generally* Pl. Ex. 6.)

Having reviewed the receipts, notes and spreadsheets prepared by Ho, the summaries prepared by counsel, as well as the credible testimony offered at trial, the court accepts plaintiff's counsel's calculations of the employment-related expenses incurred by Ho, as well as the advances and reimbursements made by Zhu and Target Construction. The court's findings are summarized in a table in Appendix B.

G.   Post-Employment Payments and Dishonored Checks

Ho stopped working for Zhu and Target Construction on November 21, 2007 because he ran out of money to support himself. (Tr. at 91-92.) When Ho informed Zhu of his situation, Zhu told Ho to take the day off. (*Id.* at 92.) Ho visited Zhu a number of times after November 21, 2007 to inquire about work and about payment. (*Id.* at 92, 137-38.) During one of those visits, Zhu asked Ho to go to Kudos Construction, a company that had hired Target Construction in the past, to pick up a check. (*Id.* at 60, 92.) Zhu promised Ho that if Ho would bring the Kudos Construction check to him, Zhu would immediately pay the salary he owed him. (*Id.* at 60, 92-93.) Ho picked up the check from Kudos Construction and met Zhu at a bank, as they had agreed. (*Id.* at 92-93.) However, when Zhu refused to abide by his promise, Ho refused to turn over the Kudos Construction

check to Zhu.  (*Id.* at 60-61, 93-94.)  Currently, Ho is still in possession of the Kudos Construction check and has not cashed it.  (*Id.* at 60-61, 94.)

In addition to the payments mentioned above in Section E, Zhu gave Ho four checks, both during the time Ho was still working for Target Construction and after he left on November 21, 2007.  (*Id.* at 84-89; Pl. Ex. 5.)  All four checks were dishonored.  (*Id.*)  A check for $2,000 dated April 1, 2007 from Target Construction, with a note stating "materials/tools/lunch," was dishonored by the bank when Ho attempted to deposit it.  (Tr. at 86; Pl. Ex. 5.)  A check for $2,000 dated September 21, 2007 from Target Construction, with a note stating "salary," was dishonored by the bank when Ho attempted to deposit it.  (Tr. at 86-87; Pl. Ex. 5.)  A check for $5,000 dated November 7, 2007, with a note stating "salary," was dishonored by the bank when Ho attempted to deposit it. (Tr. at 87; Pl. Ex. 5.)  A check for $3,000 dated March 29, 2008 from Zhu, with a note stating "Target Construction of NY Corp. salary 2007," was dishonored by the bank when Ho attempted to deposit it.  (Tr. at 88; Pl. Ex. 5.)  Zhu and his family also gave Ho several cash payments after he left Target Construction, totaling $3,500.  (Tr. at 84, 152-53.)

H.    Target Construction's Business and Expenses in 2007

Target Construction worked on at least six different projects in 2007.  *See infra*.  Kudos Construction hired Target Construction to perform concrete work at a Brooklyn condominium project.  (Tr. at 9-10; Pl. Ex. 2.)  Stephen Kim ("Kim"), a project manager from Kudos Construction, testified at trial about his dealings with Target Construction in connection with this project.  (Tr. at 9-16.)  Kim explained that Kudos Construction hired Target Construction to perform concrete slab work and CMU masonry work at the Brooklyn condominium, and that the contract price was for $113,000.  (Tr. at 10, 12.)  The contract between Kudos Construction and Target Construction, introduced into evidence as Plaintiff's Exhibit 2, confirms that testimony.  (Pl. Ex. 2.)  Kim further explained that Kudos Construction paid Target Construction only $107,000, rather than the full contract price, because of a $6,000 back-charge for work that had to be redone.  (Tr. at 12.)  The payments to Target Construction were introduced into evidence as Plaintiff's Exhibits 3 and 4, and these payments confirm that Target Construction received $107,000 from Kudos Construction for the Brooklyn condominium project.  (Pl. Exs. 3-4.)  Of the $107,000

paid to Target Construction, $90,000 were paid in 2007 and $17,000 were paid in 2008.[10]  (*Id.*)

Jimmy Chen testified at trial about another project with Target Construction.  (Tr. at 18-33.)  Chen and his family hired Target Construction as general contractor to build a three-level brick house at 88-31 St. James Avenue in Queens. (*Id.* at 18.)  The family signed the contract with Target Construction on or about 2006 or 2007.  (*Id.*)  Chen testified that Target Construction spent two years working on the project. (*Id.* at 19.)  The contract price was for approximately $500,000, and Chen testified that his family made several installments payments to Target Construction, and paid the balance once the family received the Certificate of Occupancy.  (*Id.* at 19-20.) However, Chen did not recall the exact date the family hired Target Construction, or the dates or amounts of the installment payments.  (*Id.* at 18, 20.)  Ho testified at trial that he worked on the St. James Avenue project while he was at Target Construction, and that when he left the company on November 21, 2007 the house was 95% completed.  (*Id.* at 37, 40.)  Further, the court takes judicial notice of the Certificate of Occupancy

---

[10]     Kim testified that two payments were made in 2008, one for $10,000 in January 2008 and another for $4,000 in March 2008.  The records confirm that one $10,000 payments was made in January 2008.  However, the records reflect that $7,000, not $4,000, were paid to Target Construction in March 2008.  The court assumes that Kim was referring to the $7,000 payment in March 2008 and simply misstated the amount.

issued for the St. James Avenue property, available through the New York City Buildings Information System, which is dated September 3, 2008.[11]

In addition to testifying about the two projects described above (*id.* at 39-40), Ho testified that Target Construction worked on four additional projects in 2007. (*Id.* at 37-38, 40-41.) No evidence was presented about the contract price of these four projects or the amounts received by Target Construction from these projects. Target Construction was hired as general contractor to remodel the lobby of an apartment building on North Moore Street. (*Id.* at 38-39.) The project lasted approximately two months, and Target Construction hired seven to eight workers, including Ho, to perform the remodeling. (*Id.*) Target Construction was also hired for a renovation of a storefront in Chinatown, Manhattan. (*Id.* at 38.) The Chinatown project lasted between five days to a week. (*Id.* at 46.) Ho worked on this project, and testified that the project ended before the work was finished because the owner of the building refused to rent it to the tenant who had hired Target Construction for the renovation work. (*Id.* at 123-34.) Ho also testified that Target Construction worked on one project in Bay

---

[11] The Certificate of Occupancy for 88-31 St. James Avenue in Queens is available through the New York City Buildings Information System website at http://www.nyc.gov/html/dob/html/bis/bis.shtml. A copy of the Certificate of Occupancy for this property was attached to plaintiff's post-trial memorandum as exhibit C. (Pl. Mem., Ex. C)

Ridge and on a remodeling project in New Jersey. (*Id.* at 38, 41.) However, Ho did not provide any information about these last two projects.

Ho testified that, on average, Target Construction employed seven employees during 2007, at daily rates between $105 and $130. (*Id.* at 41.) At trial, plaintiff introduced into evidence, as Plaintiff's Exhibit 1, copies of receipts produced by Zhu during discovery, documenting some of Target Construction's business expenses between February and December 2007. (*Id.* at 156-58; Pl. Ex. 1.) Plaintiff's counsel also submitted a chart summarizing the contents of those receipts. (Pl. Ex. 1.) Having reviewed Plaintiff's Exhibit 1, the court accepts plaintiff's counsel's summary of the receipts produced by Zhu, and finds that Target Construction incurred expenses of $169,725.11 between February and December 2007. Further, as was previously stated in Section F, above, and summarized in Appendix B, Ho incurred additional expenses on behalf of Target Construction in the amount of approximately $88,970.39.

### CONCLUSIONS OF LAW

This court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This court has jurisdiction over plaintiff's supplemental state law claims pursuant to 28 U.S.C. § 1337.

A.   FLSA Coverage

        Plaintiff seeks to recover minimum pay, overtime pay,
attorney's fees and costs, and liquidated damages, pursuant to
the FLSA.  (Compl. at 8-9.)  The FLSA requires an employer to
pay its employees at least minimum wage and to pay an overtime
rate of "not less than one and one-half times the regular rate"
for all hours worked in excess of forty hours in one work week.
*See* 29 U.S.C. §§ 206, 207.  To be covered by the FLSA, an
employee must be employed by an "enterprise engaged in commerce
or in the production of goods for commerce" or the employee must
"engage[] in commerce or in the production of goods for
commerce."  29 U.S.C. §§ 203(s)(1), 203(r)(1), 206, 207.  In the
instant case, plaintiff argues that he is covered by the FLSA
minimum wage and overtime pay provisions because Target
Construction is an "enterprise engaged in commerce" as defined
by the Act.  (*See* Pl. Mem. at 3-9.)  Therefore, the court need
not address the individual coverage theory, that is, whether
plaintiff Ho was "engaged in commerce or in the production of
goods for commerce."[12]

---

[12]   A Department of Labor regulation states that individual employees are
engaged in commerce under the FLSA "when they are performing work involving
or related to the movement of persons or things (whether tangibles or
intangibles, and including information and intelligence)" between states.  29
C.F.R. § 779.103.  "For example, an employee could be engaged in commerce by
regularly using the mail or the telephone between states, or traveling across
state lines."  *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 292
(E.D.N.Y. 2007) (citing Department of Labor regulation).  "A substantial part
of the employee's work must be related to interstate commerce." *Id.* (internal
quotation marks and citations omitted).

Under the FLSA, an enterprise is "engaged in commerce" if it "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and . . . [its] annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1); *see Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 291 (E.D.N.Y. 2007). In the context of the FLSA, "enterprise" means "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments." 29 U.S.C. § 203(r). "Enterprise coverage has been interpreted broadly." *Boekemeier v. Fourth Universalist Society in the City of New York*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000). In the instant case, it is clear that Target Construction is an "enterprise" for purposes of the FLSA. *See, e.g.*, *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325 (S.D.N.Y. 2009) (applying FLSA requirements to construction and carpentry companies).

It is also clear that Target Construction had "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" as required by the FLSA. *See* 29 U.S.C. § 203(s)(1)(A)(i). This

requirement is "rarely difficult to establish." *Jacobs v. New York Foundling Hospital*, 577 F.3d 93, 99 n.7 (2d Cir. 2009). The broad statutory language, only requiring that employees handle or otherwise work on goods or materials moved in commerce, results in "virtually every enterprise in the nation doing the requisite dollar volume of business [being] covered by the FLSA." *Archie v. Grand Central Partnership, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (internal quotation marks and citation omitted). Here, Ho regularly purchased and worked with tools and construction materials from national chains such as Home Depot and Lowes. (Tr. at 57.) Those tools and construction materials undoubtedly traveled in interstate commerce before reaching stores such as Home Depot and Lowes. *See, e.g.*, *Archie*, 997 F. Supp. at 530-31 (finding that because employees "used a number of items" and "supplies" which "undoubtedly moved in interstate commerce to New York City," the FLSA requirement was satisfied); *Boekemeier*, 86 F. Supp. 2d at 285-86 (similar). Because Ho, and other Target Construction employees, handled and worked with tools and construction materials that traveled in interstate commerce, this requirement for FLSA coverage is satisfied.

The remaining element to establish enterprise coverage under the FLSA is whether Target Construction did business of

not less than $500,000 during the relevant year.[13] "Enterprise coverage will apply . . . only to the extent the business done by the relevant enterprise exceeds $500,000 for" the relevant years. *Boekemeier*, 86 F. Supp. 2d at 286. Here, plaintiff argues that he "presented evidence regarding Target Construction's actual revenue, the type and amount of Target's business, and the company's operating expenses" for the relevant period, and that "[t]his evidence shows that Target was engaged in several large construction projects per year that in aggregate generated in excess of $500,000 in annual revenue." (Pl. Mem. at 4-5.) The court disagrees.

The payments by Kudos Construction for the Brooklyn condominium project constituted the only direct evidence of Target Construction business during the relevant period, which

---

[13] Plaintiff argues that the relevant time period here is the 12-month period between mid-January 2007, when Ho began working for Zhu and Target Construction, until mid-January 2008. (Pl. Mem. at 4.) Federal regulations, however, suggest that the relevant 12-month period is calculated using the calendar or fiscal year, or by using a rolling quarter method. *See* 29 C.F.R. § 779.266. Including in the 12-month period the time starting in mid-January 2007 through mid-January 2008 would mean that the $10,000 payment by Kudos Construction to Target Construction during that time would be included in the "amount of business" calculation to determine FLSA coverage. Otherwise, this payment would be excluded. However, the court need not decide whether the relevant 12-month period here includes only the year 2007, or whether it runs until mid-January 2008, because even if the extra payment in mid-January 2008 is included in the amount of business calculation, the court finds that plaintiff has failed to establish that "the annual gross volume of sales made or business done" by Target Construction was in excess of $500,000 during that period.

generated about $100,000 in business.[14]  (*See* Tr. 9-13; Pl. Exs.

3-4.)  Plaintiff argues that the evidence at trial also

established that Target Construction received at least $250,000

during the relevant period from Chen and his family for the St.

James Avenue project.  (Pl. Mem. at 6.)  The court disagrees.

Chen testified that his family paid Target Construction

approximately $500,000 for building the house on St. James

Avenue, that the payments were made by installments, that the

project took two years, and that the family paid in full once

the Certificate of Occupancy was issued, which the New York City

Buildings Information System show was on September 3, 2008.

(Tr. at 18-20; Pl. Mem., Ex. C.)  There is no evidence on the

record regarding the amounts paid to Target Construction in each

installment, or even that the installments payments were

regularly made.  Further, there is no evidence that the

installment payments were proportional to the amount of work

performed on the house or the materials purchased, and thus the

fact that the house was 95% finished by the time Ho left the

company in November 21, 2007 does not alter the analysis.  (*See*

Tr. at 40.)  The testimony presented at trial does not establish

by a preponderance that at least $250,000 was paid to Target

---

[14]    This is assuming, without deciding, that the relevant 12-month period
here is from mid-January 2007 until mid-January 2008, and thus the $10,000
payment in mid-January 2008 is included in the calculation.

Construction during the relevant period for the St. James Avenue project.

Even assuming that Target Construction did receive $250,000 for the St. James Avenue project during the relevant period, bringing the total amount proven so far to $350,000, the evidence still does not establish by a preponderance that Target Construction performed an additional $150,000 in business to meet the requirement for FLSA coverage. The evidence at trial established that Target Construction worked on an additional four projects during the relevant period: the lobby remodeling in North Moore Street, the storefront renovation in Chinatown, the project in Bay Ridge, and the remodeling project in New Jersey. (Tr. at 37-38, 41.) The North Moore Street project lasted approximately two months and employed seven to eight employees, and the storefront renovation in Chinatown lasted approximately five days to a week, but ended before the project was finished. (Tr. at 38-39, 46, 134.) No evidence was presented regarding the contract prices of the Bay Ridge or New Jersey projects. No evidence whatsoever was presented regarding the possible amount of business realized from these projects.

The court cannot find by a preponderance, based on the record evidence, that the Target Construction business from the Target Construction projects during the relevant January 2007 to January 2008 period was at least $500,000. Too much speculation

would be required to reach that conclusion.  The court has little or no information regarding the size of the projects, how elaborate the work required for each was, or even how these projects compared to the work performed for Kudos Construction, for which direct evidence is available.  There is simply not enough evidence for the court to find that at least $500,000 in business was derived from the Target Construction projects during the January 2007 to January 2008 period.

Finally, plaintiff argues that the court should also consider the expenses incurred by Target Construction during the relevant period to determine the amount of business done by the company.  (Pl. Mem. at 7-8.)  Plaintiff relies on *Velez v. Vassallo*, 203 F. Supp. 2d 312 (S.D.N.Y. 2002), for the proposition that "to determine the amount of revenue earned by defendants in FLSA cases, Courts typically look to direct evidence of revenue, as well as evidence presented about the volume and nature of a business and projections of annual revenue based on a business's known expenses."  (Pl. Mem. at 4.) Plaintiff's reliance on *Velez* is misplaced.  The court in *Velez* did not find that the amount of business expenses for a defendant company could be considered in determining its gross business for purposes of the FLSA.  Rather, the court in *Velez* merely noted that the plaintiffs in that case relied on such evidence to argue that the defendant company did business in

excess of $500,000 during the relevant time period. *Velez*, 203 F. Supp. 2d at 329 n.14. Plaintiff has presented no cases in which courts actually relied on business expenses information to determine the gross amount of business done by an enterprise during a relevant period.

However, even assuming that reliance on business expenses would be proper, the evidence of business expenses here is not sufficient to establish that Target Construction did business of not less than $500,000 during the relevant period. Target Construction employed, on average, seven workers each day during 2007, with daily rates of $105 to $130. (*See* Tr. at 41.) Plaintiff estimates that this amounts to an annual labor cost of about $218,000. (*See* Pl. Mem. at 7.) Further, the evidence established that Target Construction incurred expenses of at least $258,695.50 based solely on the receipts submitted by Zhu and the receipts and records kept by Ho. (*See* Pl. Ex. 1; Pl. Ex. 6; *see also* Pl. Mem. at 7.) Plaintiff asserts that this evidence of business expenses, in addition to the undocumented operating expenses for the company, establishes that the expenses for Target Construction for the relevant period were over $500,000. (*See* Pl. Mem. at 7-8.) Plaintiff argues that operating expenses above $500,000 suggest business revenues of at least that amount. (*Id.*) The court, again, disagrees.

Ho testified that Zhu and Target Construction failed to pay workers' wages on a regular basis. (Tr. at 72, 109.) The annual labor cost, thus, cannot be calculated with any certainty. Moreover, the documented business expenses only show $258,695.50 in expenses, which is insufficient to establish by a preponderance that Target Construction business was approximately double that amount during the same period. In fact, Zhu and Target Construction failed to reimburse Ho for approximately $12,713.39 of those business expenses, which suggests that Target Construction did not generate enough business to fully cover its expenses. *See* Appendix B. Nor can the court consider the documented business expenses as additional indirect evidence to be considered in conjunction with the direct evidence of revenues derived from Kudos Construction and the St. James Avenue projects. It is possible that there is a significant amount of overlap, such that those business expenses reflect the expenses incurred in those two projects, and thus the business expenses would not constitute indirect evidence of additional business.

Consequently, the court finds that plaintiff has failed to establish by a preponderance of the evidence that Target Construction did business during the relevant period of not less than $500,000. It is true that defendants Zhu and Target Construction failed to produce evidence showing revenue

or business below $500,000.  However, establishing that Target
Construction is a covered enterprise is an element of the cause
of action under the FLSA, and thus the burden of proof falls on
the plaintiff to establish coverage, including establishing that
Target Construction did business of not less than $500,000
during the relevant period.  *See Velez*, 203 F. Supp. 2d at 330,
332.  Because Ho has failed to meet that burden, the court
cannot find that Target Construction is a covered enterprise,
and he cannot recover damages under the FLSA.

B.    NYLL Coverage and Employment Relationship

        Plaintiff seeks to recover minimum pay, unpaid wages,
overtime pay, spread-of-hours pay, reimbursement for employment-
related expenses, attorney's fees and costs, and liquidated
damages, pursuant to NYLL.  (Compl. at 9-12.)  Unlike the FLSA,
New York law "does not require a nexus with interstate commerce
or any minimum amount of annual sales."  *Duro v. BZR Piping &
Heating Inc.*, 10-CV-0879, 2011 WL 710449, at *2 (E.D.N.Y. Jan.
26, 2011); *see* N.Y. Lab. Law §§ 2, 190, 651.  Therefore,
plaintiff need only demonstrate that he is an employee entitled
to the projections of the NYLL provisions.  *See Bierer v. Glaze,
Inc.*, CV-05-2459, 2006 WL 2882569, at *9 (E.D.N.Y. Oct. 6, 2006)
("In order to state a claim under Article 6, a plaintiff must
first demonstrate that he or she is an employee entitled to its
protections." (internal quotation marks and citation omitted)).

Generally, the NYLL defines an "employee" as "a mechanic, workingman or laborer working for another for hire." N.Y. Lab. Law § 2(5). An "employer" is defined as "the person employing such mechanic, workingman or laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate." *Id.* § 2(6). Finally, being "employed" under the statute "includes permitted or suffered to work." *Id.* § 2(7).

Moreover, specific provisions of the NYLL contain definitions on what it means to be an employee and/or employer under each. Article 6 of the NYLL, covering payment of wages, defines "employee" as "any person employed for hire by an employer in any employment." N.Y. Lab. Law § 190(2). A "manual worker" is defined as "a mechanic, workingman, or laborer." *Id.* § 190(4). "Employer" is defined to include "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service. . . ." *Id.* § 190(3).

Article 19, the Minimum Wage Act, also contains specific definitions. *See* N.Y. Lab. Law § 651. "Employee" is defined to include "any individual employed or permitted to work by an employer in any occupation," with exceptions not relevant to the instant case. *Id.* at § 651(5). Under Article 19, "employer" is defined to include "any individual, partnership, association, corporation, limited liability company, business

29

trust, legal representative, or any organized group of persons acting as employer." *Id.* § 651(6).

The New York Compilation of Codes, Rules and Regulations, containing the New York State Department of Labor Minimum Wage Order for Miscellaneous Industries and Occupations, enacted pursuant to the NYLL, also contains a specific definition for employee. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-1.1 *et seq.* Under these administrative regulations, "employee" is defined as "any individual employed, suffered or permitted to work by an employer," with various exceptions not relevant to the instant case. *Id.* § 142-2.14.

Here, plaintiff Ho was an "employee" for purposes of the provisions of the statutes and administrative regulations described above. Ho worked for Zhu and Target Construction as a project manager's assistant, construction worker, and laborer. (*See, e.g.*, Tr. at 36, 41-43, 45, 128-29, 154-55.) Ho most certainly qualifies as a "laborer" or a "person employed for hire" or "employed or permitted to work" or "employed, suffered, or permitted to work" by an employer. *See, e.g.*, *Kopec v. GMG Const.*, 09-CV-2187, 2010 WL 3925210 (E.D.N.Y. Sep. 10, 2010), *adopted in full*, 2010 WL 3909273 (E.D.N.Y. Sep. 30, 2010) (applying NYLL provisions to construction workers, laborers, and other helpers).

There is no dispute that defendants Zhu and Target Construction were plaintiff's employers within the meaning of NYLL.  In his Complaint, plaintiff alleged that "[a]t all times relevant to this action, Defendant Xue Wen Zhu and Defendant Target Construction were Plaintiff's employers within the meaning of . . . New York Labor Law."  (Compl. at 3.)  In their Answer, defendants failed to deny this allegation.  (ECF No. 4, Answer to Compl.)  Therefore, that allegation is deemed admitted by defendants.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . .").

Even if Zhu had not admitted to the allegation in the Complaint that he is an employer for purposes of NYLL, and is therefore jointly and severally liable with Target Construction for any damages, the facts presented at trial support the same conclusion.  The test to determine whether a person or entity qualifies as an "employer" under NYLL is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) (noting that the "economic reality" test,

developed in the FLSA context, applies to claims under NYLL); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264 n.48 (S.D.N.Y. 2008) (similar). "Factors to consider when examining the economic reality of a particular situation include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records, though no single factor is dispositive." *Yang*, 427 F. Supp. 2d at 342 (internal quotation marks and citations omitted). "These factors are not exclusive, and the plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer." *Ke*, 595 F. Supp. 2d at 264.

In the instant case, the facts clearly demonstrate that Zhu qualifies as an employer within the meaning of NYLL. As stated above in Section A of the Findings of Facts, Zhu was responsible for hiring Ho, was the only person in charge of Target Construction operations, and acted as a supervisor. (Tr. at 35-37, 119-23.) Zhu set the wages, hours, and terms and conditions of employment for Ho. (*Id.* at 36, 70-72, 83-84, 119-23.) Throughout the employment relationship, Ho reported to Zhu on a daily basis regarding the work at Target Construction, and received instructions from Zhu on the tasks to be performed each day. (*Id.* 41-43, 45.) Zhu was responsible for paying Ho his

salary and for reimbursing Ho for expenses incurred by him on behalf of Target Construction. (*Id.* at 55, 57-58, 71-72, 81-82, 108-09.) Even though Zhu failed to maintain employment records, which is one of the factors to consider when determining whether a defendant is an "employer" under NYLL, the failure to satisfy this one factor does not alter the conclusion because "no single factor is dispositive." *Yang*, 427 F. Supp. 2d at 342. Therefore, upon weighing all the factors listed above, the court finds that Zhu was Ho's employer pursuant to NYLL and subject to its provisions.

C.    Wage Rates, Hours Worked, and Wages Paid

Under NYLL, an employee has the burden to establish that he is entitled to the wages claimed, but the employer bears the burden to maintain appropriate employment records. *See Yang*, 427 F. Supp. 2d at 331-32, 335-37 (defining FLSA standard and noting that "New York law incorporates a similar standard"). NYLL and related administrative regulations require that an employer "establish, maintain and preserve for not less than six years, weekly payroll records which shall show for each employee: . . . (3) wage rate; (4) the number of hours worked daily and weekly[;] . . . (6) the amount of gross wages; (7) deductions from gross wages; . . . [and] (9) net wages paid." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6; *see also* N.Y. Lab. Law § 195(4) (requiring employers to "establish, maintain

and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee"). Given the state law record-keeping requirement, the burden is on the employer to demonstrate that a particular employee was properly compensated. *Yang*, 427 F. Supp. 2d at 331-32 & n.3, 335-37 & n.15. In the absence of adequate employment records, the plaintiff claiming lost wages "may carry his burden by submitting sufficient evidence from which violations of the [law] and the amount of an award may be reasonably inferred." *Id.* at 331. "The plaintiff is able to meet his initial burden under the statute 'by relying on his recollection alone.'" *Jiao v. Chen*, 03 Civ. 0165, 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007) (citing *Yang*, 427 F. Supp. 2d at 335-36). Under NYLL, the burden then shifts to the employer to show "by a preponderance of the evidence that [the] plaintiff was properly paid for the hours worked." *Jiao*, 2007 WL 4944767, at *3; N.Y. Lab. Law § 196-a(a) (noting that if an employer fails to keep records, "the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements").

Here, defendants failed to maintain employment records as required under NYLL. Plaintiff testified as to his recollection of his promised wage rate, hours worked, and wages paid, and introduced into evidence records he kept containing

this information.  (Tr. at 36-37, 43-44, 46, 50-55, 70-72, 83-84; Pl. Ex. 7.)  The evidence regarding the hours worked by Ho properly included the time spent driving workers to, from, and between job sites, because Zhu specifically instructed Ho to drive workers as part of his job duties (*see* Tr. at 41-45), and "time spent traveling, to the extent that such traveling is part of the duties of the employee" is compensable under NYLL.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(d).  Defendant Zhu was precluded from presenting any evidence at trial due to his failure to comply with court orders (*see* Order dated 6/3/2010), and therefore has failed to show by a preponderance that plaintiff was properly compensated for all the hours he worked for Target Construction.  Consequently, the court finds that plaintiff has met his burden to establish his wage rates, hours worked, and wages paid, and his testimony and documentary evidence regarding these matters are credited.

D.  Unpaid Regular Wages

The "frequency of payments" provision of NYLL requires employers to make regular payment of wages to employees.  N.Y. Lab. Law § 191.  The statute provides that a "manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  *Id.* § 191(1)(a)(i).  Other workers "shall be paid the wages earned in accordance with the agreed terms of employment, but not less

frequently than semi-monthly, on regular pay days designated in advance by the employer." *Id.* § 191(1)(d). Further, if employment is terminated, the statute requires an employer to "pay the wages not later than the regular pay day for the pay period during which the termination occurred." *Id.* § 191(3).

Pursuant to this statute, "[i]f an employer wrongfully withholds earned wages, an employee may sue to recover the wages, as well as (1) prejudgment interest; (2) reasonable attorney's fees; (3) costs of the suit; and (4) liquidated damages of 25% of the withheld wages, if the employer willfully withheld the wages." *Dreyfuss v. eTelecare Global Solutions-US, Inc.*, 08 Civ. 1115, 2010 WL 4058143, at *5 (S.D.N.Y. Sep. 30, 2010); *see also* N.Y. Lab. L § 198(1-a); N.Y. C.P.L.R. § 5001(a); *Cuzco v. Orion Builders, Inc.*, 06 Civ. 2789, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010) (ruling on claim for lost wages brought pursuant to N.Y. Lab. Law § 191). Plaintiff here has demonstrated that Zhu and Target Construction failed to pay him any wages from April 6, 2007 until his termination in November 21, 2007. *See supra* Section E.

Under the provision outlined above, plaintiff was entitled to be paid by defendants weekly if he is considered a "manual worker" or, at the very least, semi-monthly under the "other worker" provision. *See* N.Y. Lab. Law § 191. Here, plaintiff has established that between April 6, 2007 and

November 21, 2007, defendant Zhu failed to pay him his earned wages weekly or semi-monthly, and failed to pay his earned wages within two weeks of his termination from Target Construction. Plaintiff can therefore recover for all unpaid wages at the promised rate of pay, i.e. the daily rate promised by Zhu, in the total amount of $17,640.00 during this period. The calculations of the unpaid wages for all weeks at issue in this case are contained in a table attached as Appendix C.

E.   <u>Minimum Wage</u>

The New York Minimum Wage Act provides that "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than" the statutorily prescribed minimum wage. N.Y. Lab. Law § 652. At all relevant times, the minimum wage in New York was $7.15 per hour. *Id.*

Here, because Zhu and Target Construction failed to pay Ho any wages between April 6, 2007 and the termination of his employment with Target Construction on November 21, 2007, plaintiff has established a violation of the minimum wage provision. (*See* Tr. at 55, 72, 83-84.) However, because the court has already determined that plaintiff is entitled to recover unpaid wages pursuant to the frequency of payments provision, he cannot also recover minimum wage for those same hours. In a similar context, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff

may recover under the statute which provides the greatest amount of damages," but "cannot recover twice for the same minimum wage/overtime violations under both federal and state law." *Jiao*, 2007 WL 4944767, at *17. The same should be true here where plaintiff seeks to recover under two different provisions of state law. Therefore, because plaintiff is recovering unpaid wages pursuant to the frequency of payments provision, and because the court has determined the recovery under that provision would be greater than recovery under the minimum wage provision, plaintiff is not entitled to recover additional damages for minimum wage violations.

F.   Overtime Pay

     NYLL provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided" in the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. The administrative regulations define "regular rate" as "the amount that the employee is regularly paid for each hour of work" and "[w]hen an employee is paid on a . . . salary . . . the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16. Absent a showing by the employer of an agreement that a fixed salary would cover different number of hours, "[t]here is a

rebuttable presumption that a weekly salary covers 40 hours."
*Yang*, 427 F. Supp. 2d at 335; *see also Moon v. Kwon*, 248 F.
Supp. 2d 201, 207 (S.D.N.Y. 2002).

Here, the facts established that Ho initially was
promised a fixed daily wage under the understanding that his
hours would be 9:00 a.m. to 5:00 p.m., five days a week.  (Tr.
at 36, 43.)  His hourly rate for purposes of determining his
overtime pay is calculated by dividing the promised rate for the
particular period over the number of hours it was estimated to
cover, i.e. eight hours per day, forty hours per week.  His
overtime rate, as stated above, would then be one and one-half
times that regular rate.

The court has calculated Ho's regular rate and
overtime rate for all relevant periods, and those findings are
contained in the table attached as Appendix C.  Based on these
rates, and on the court's previous calculation of all hours
worked by Ho during the relevant time period (*see* Appendix A),
the court finds that Ho is entitled to $12,067.50 in overtime
pay for the hours worked over forty in one week.  The
calculation for overtime pay are also contained in Appendix C.[15]

---

[15]     Because Ho is recovering unpaid wages at his promised daily rate
pursuant to the frequency of payments provision, the court has deducted from
Ho's overtime pay calculation any amount recovered under his promised wages
damages that exceeded compensation for forty hours in one week at the
calculated hourly rate.  Ho should not be compensated for overtime work both
under the unpaid wages calculation and the overtime pay calculation.

G.    Spread-of-Hours Pay

        The "spread of hours" provision of NYLL entitles
employees such as plaintiff to one additional hour of pay at the
minimum hourly wage for each day they worked over ten hours.
*See* N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, §
142-2.4; *see also Yang*, 427 F. Supp. 2d at 339 ("New York law
provides that covered employees, such as plaintiff, are entitled
to an additional hour's pay at the basic minimum rate for any
day in which 'the spread of hours' . . . exceeds 10 hours.").

        Here, plaintiff established that, with the exception
of the first weeks of his employment at Target Construction, he
regularly worked for more than ten hours in a single day without
any additional compensation.  (Tr. at 53, 84; Pl. Ex. 7.)
Therefore, Ho is entitled to an additional hour of pay at the
minimum hourly rate in effect during the time he was employed by
defendants, here $7.15 per hour, for each day he worked more
than ten hours.  *See* N.Y. Lab. Law § 652 (setting minimum hourly
rate for New York).  Based on the court's previous calculation
of the days and hours worked by Ho (*see* Appendix A), the court
finds that Ho is entitled to spread-of-hours compensation in the
amount of $1,208.35.  The calculation of the spread-of-hours
damages is contained in Appendix C.

## H.    Illegal Kickbacks or Deductions from Wages

NYLL provides that "it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment."  N.Y. Lab. Law § 198-b(2).  Here, plaintiff claims that the failure to reimburse him for all expenses he incurred on behalf of Zhu and Target Construction amounts to an illegal kickback under this provision.  (Pl. Mem. at 19.)  However, the facts do not show that Ho incurred such expenses on the "statement, representation or understanding that failure to comply" with the requests by Zhu "[would] prevent [him] from procuring or retaining employment."  When specifically asked at trial what would happen if Ho refused to comply with a request from Zhu, Ho did not respond that he would suffer adverse employment consequences. (Tr. at 100.)  There is no evidence on the record to establish that Ho's employment was dependent on him incurring these expenses, or that he understood or was in some way informed that this was the case.  Therefore, plaintiff cannot recover under the NYLL illegal kickback provision.

Plaintiff additionally argues that he is entitled to reimbursement of expenses pursuant to the NYLL provision prohibiting certain deductions from wages. (Pl. Mem. at 19 (citing N.Y. Lab. Law § 193).) According to plaintiff, the unreimbursed expenses here constitute an illegal deduction under the law. (*Id.*) In his Complaint, however, plaintiff did not bring a cause of action under the illegal deductions provision of NYLL. (*See generally* Compl.) Rather, plaintiff claimed only that the failure to reimburse expenses constituted an illegal kickback. (*Id.* at 12.) Plaintiff cannot amend his Complaint to add a new cause of action by arguing now that the failure to reimburse also amounted to an illegal deduction under NYLL. Therefore, Ho cannot recover for unreimbursed expenses under NYLL.

I.   Unjust Enrichment

Plaintiff seeks to recover reimbursement of expenses incurred by him on behalf of Zhu and Target Construction under the common law doctrine of unjust enrichment or quantum meruit. (Pl. Mem. at 22-23.) In his post-trial memorandum, plaintiff argues that defendant Zhu was unjustly enriched by the value of all the purchases and employment-related expenses incurred by Ho. (*Id.*) "A cause of action under a quasi contract theory only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed

in order to prevent a party's unjust enrichment." *Heller v. Kurz*, 228 A.D.2d 263, 264 (N.Y. App. Div. 1996) (internal quotation marks and citations omitted). "Recovery is available not only where there has been an actual benefit to the other party, but in the instance of a wrongdoing defendant, to restore the plaintiff's former status, *including compensation for expenditures* made in reliance upon the defendant's representations." *Halpern v. Greene*, 24 Misc.3d 1251(A), at *6 (N.Y. Sup. Ct. 2009) (emphasis added).

"Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under a contract implied . . . in law to pay reasonable compensation." *Snyder v. Bronfman*, 921 N.E.2d 567, 569 (N.Y. 2009) (internal quotation marks and citation omitted). To make out a claim for unjust enrichment or quantum meruit, "a claimant must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Heller*, 228 A.D.2d at 264 (internal quotation marks and citations omitted); *Moors v. Hall*, 143 A.D.2d 336, 337-38 (N.Y. App. Div. 1988). "As a general rule, the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services." *Moors*, 143 A.D.2d at 338.

However, this inference does not arise "where because of the relationship between the parties, it is natural that such service should be rendered without expectation of pay." *Id.* (internal quotation marks and citations omitted). "In such situations, the claimant, in order to prevail, must present evidence to indicate that he or she expected to be paid for the services (i.e., the submission of a bill for services rendered)." *Id.* (internal quotation marks and citations omitted).

Here, Ho established that he incurred expenses on behalf of Zhu and Target Construction in good faith, after Zhu requested that he pay for tools and construction materials, drive workers to, from, and between job sites, buy a new cell phone, pay for Target Construction bills, and pay for workers' salaries. (Tr. at 41-45, 108-09, 128-30, 154-55.) Ho complied with defendants' requests, expecting that Zhu and Target Construction would reimburse him for those expenses. (*Id.* at 61-62, 73-74.) Even though Ho and Zhu were good friends (*id.* at 35, 134), Ho nevertheless had an expectation of compensation and Zhu was aware of that expectation. This expectation was reasonable, given that Zhu promised at various times to reimburse Ho and in fact did, on several occasions, either advance money or fully reimburse Ho for other expenses. (*Id.* at 36, 57-58, 62-64, 82, 119.) Ho kept receipts and/or took note

of his expenses, and requested reimbursement from Zhu. (*Id.* at 62-63; Pl. Ex. 6.) Further, Zhu accepted these benefits, knowing that Ho was expecting to be reimbursed. As early as February of 2007, Ho gave Zhu a list of his expenses requesting reimbursement, and thus Zhu was on notice that Ho expected payment. (*Id.* at 62-63.) Moreover, Zhu requested that Ho prepare spreadsheets of all his expenses to determine how much money he was owed, acknowledging that reimbursement was, in fact, required. (*Id.* at 65-66.) Ho has presented credible testimony and documentary evidence of the expenses he incurred on behalf of Zhu and Target Construction, establishing the value of those expenses. (*Id.* at 66-67; Pl. Ex. 6.) Consequently, the court finds that Ho is entitled to reimbursement of all unpaid expenses incurred on behalf of Zhu and Target Construction.

The court already determined, as outlined in Appendix B, the amount of expenses incurred by Ho, as well as the advances and reimbursements made by Zhu and Target Construction. These findings show a balance due to Ho in the amount of $12,713.39. However, because Zhu and his family made additional cash payments to Ho, totaling $3,500.00, this amount is subtracted from the $12,713.39. Therefore, the court finds that Ho is entitled to recover $9,213.39 as reimbursement of expenses under New York common law.

45

J.  Payment of Dishonored Checks

Plaintiff alleged in his Complaint and pretrial submissions that he was entitled to recover against Zhu and Target Construction for the four checks paid by them that were subsequently dishonored by the banks. (Compl. at 13; ECF No. 42, Pl. Pretrial Statement of Claims at 10.) Plaintiff appears to have abandoned this claim, as he completely failed to address it in his post-trial submissions. (*See* Pl. Mem.) Moreover, the court need not decide whether plaintiff has established liability against Zhu and Target Construction for the dishonored checks, or whether he has abandoned this claim, because the court already determined that plaintiff is entitled to recover the unpaid wages and unpaid expenses that these checks were meant to cover. *See supra*. For the same reasons outlined above in Section E of the Conclusions of Law, plaintiff should not recover twice for the same damages, and thus cannot recover for the dishonored checks.

K.  Liquidated Damages

NYLL allows a plaintiff to recover liquidated damages equivalent to 25% of the total amount of the wages found to be due, if the plaintiff can show that the employer's violations of the law were willful. *See* N.Y. Lab. Law §§ 198(1-a), 663(1); *see also Rodriguez v. Almighty Cleaning, Inc.*, CV 09-2997, 2011 WL 691184, at *7 (E.D.N.Y. Feb. 28, 2011). A willful violation

46

is established when the facts show that an employer voluntarily underpaid employees. *Moon*, 248 F. Supp. 2d at 235. "Willfulness under NYLL means that the employer 'knowingly, deliberately, or voluntarily disregard[ed] its obligation to pay wages.'" *Duro v. BZR Piping & Heating Inc.*, 10-CV-0879, 2011 WL 710449, at *4 (E.D.N.Y. Jan. 26, 2011) (quoting *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998)). "It is unnecessary for a court to find malice or bad faith when determining liquidated damages." *Id.* (citing *Pavia v. Around The Clock Grocery, Inc.*, 03-CV-6465, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005)). Rather, finding that an employer knowingly disregarded his obligations under the law to pay wages is sufficient. *Ayres*, 12 F. Supp. 2d at 309.

Here, plaintiff has shown that Zhu's underpayment of wages was willful. Ho testified that Zhu asked him to keep track of other worker's hours and, at times, even pay their salaries (Tr. at 105-06, 108), showing that Zhu was aware of a responsibility to keep some employment records and make regular wage payments to his workers. Further, during the Chinatown storefront project, Zhu promised Ho double his daily pay rate to work long hours (*id.* at 84), showing that Zhu knew that workers were entitled to extra compensation whenever they were required to work long hours. Additionally, after Ho left Target Construction, he constantly reminded Zhu that he owed Ho wages,

47

and the facts demonstrate that Zhu was aware of that obligation and chose to disregard it.  (Tr. 92-95, 137-38, 144-49.) Therefore, plaintiff has established that Zhu's underpayment of wages was willful, and he is entitled to recover liquidated damages equivalent to 25% of the total amount of wages due, in the amount of $7,728.96.

L.    Prejudgment Interest

Plaintiff is entitled to recover prejudgment interest at a rate of 9% *per annum* for all damages recovered under New York law.  *See* N.Y. C.P.L.R. §§ 5001, 5004; *see Olvera v. New Ko-Sushi*, 10 Civ. 4643, 2011 WL 724699, at *5 (S.D.N.Y. Feb. 16, 2011).  This is so even if plaintiff is also recovering liquidated damages pursuant to NYLL.  *Olvera*, 2011 WL 724699, at *5.  "If 'damages were incurred at various times,' a court may compute interest 'upon all of the damages from a single reasonable intermediate rate.'"  *Id.* (citing N.Y. C.P.L.R. § 5001(b)).

Plaintiff shall calculate the prejudgment interest to which he is entitled pursuant to New York law, based on the damages awarded herein, and make a supplemental submission to the court containing said calculation, by no later than April 18, 2011.  Defendants shall file any opposition to the calculation by no later than May 2, 2011.

M.    Attorney's Fees and Costs

        NYLL allows a successful plaintiff to recover reasonable attorney's fees and costs.  *See* N.Y. Lab. Law §§ 198(1-a), 663(1).  An application for reasonable attorney's fees and costs has not yet been made.  Plaintiff shall submit any application for reasonable attorney's fees and costs pursuant to NYLL by no later than April 18, 2011.  The application shall contain: (1) contemporaneous time records; (2) description of attorney and/or other legal staff experience; and (3) supporting documentation of all costs claimed.  Defendants shall have until May 2, 2011 to file any opposition to the application for attorney's fees and costs.

**CONCLUSION**

        For the reasons stated above, the court finds that plaintiff is entitled to recover jointly and severally from defendants Zhu and Target Construction the following: (1) unpaid wages at his promised wage rate, in the amount of $17,640.00; (2) overtime pay, in the amount of $12,067.50; (3) spread-of-hours pay, in the amount of $1,208.35; (4) unreimbursed expenses, in the amount of $9,213.39; (5) liquidated damages on the unpaid wages, overtime pay, and spread-of-hours pay in the amount of $7,728.96; (6) prejudgment interest, in an amount to be determined by the court at a later time; and (7) reasonable attorney's fees and costs, in an amount to be determined by the

court at a later time.  Plaintiff is ordered to serve a copy of
these Findings of Facts and Conclusions of Law on defendants,
and file a Certificate of Service on the Electronic Case Filing
System by no later than April 1, 2011.

**SO ORDERED.**

Dated:     March 28, 2011
           Brooklyn, NY

                                    _____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge
                                    Eastern District of New York